All right. This is Brooks v. McLean County Unit No. 5. For the appellant, Mr. Slipnick. Yes, Your Honor. And Mr. Ellard. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Bruce Slipnick, and I represent the appellant, Jasmine Brooks, Special Administrator of the Estate of Donny Hampton, in this case. As Your Honors are well aware, on May 18, 2010, Donny Hampton was a student at McLean County School District No. 5. At the Kinsley Junior High, one of the appellee schools. Between the periods of his classes, he went into a bathroom with some friends, and they engaged in a game called Body Shots. And this is a game in which the students punch each other as hard as they can in the chest and in the abdomen, as hard as possible. So, after they played this game, my client, Donny Hampton, walked out of the bathroom. He collapsed and subsequently died. Now, what occurred here is, we filed the lawsuit against the school district alleging willful and wanton conduct. And what had occurred is, they made several arguments to the trial court, and the trial court granted the motion to dismiss. Under 2615 and 2619 of the Illinois Code of Civil Procedure. Now, as Your Honors are well aware, and as we discussed in the brief, that the standard of review in this kind of case is going to be de novo. Which is going to say that we have failed to plead sufficient facts to bring in willful and wanton conduct as fact. In this regard, you've got to take all well-pled facts and all reasonable inferences from those facts as true. And can only dismiss the case if there aren't any sets of facts under which we can recover. Okay. The first thing, obviously, is the duty analysis. Well, the Supreme Court has held that there is a typical duty analysis that will require four factors to be considered. The reasonable foreseeability of the injury, the likelihood of injury, the magnitude of the burden on the defendant, and the consequences of placing that burden on the defendant. Now, here, in this case, we have a statutory provision that is in place that does govern the duties of the school district. Or, more specifically, its certificated employees. That being Section 2424 of the school code. That section specifically says, teachers and other certificated educational employees and any other person, whether or not certificated, providing a related service for or with respect to a student, shall maintain discipline in the schools including school grounds which are owned or leased by the board and used for school purposes and activities. There is a statutory duty that the school shall maintain discipline. And that is what we have pled in our first amended complaint. We are claiming that the school district failed to supervise and discipline its students, failed to educate the students as to the dangers of the gang body shot, and also failed to enforce the in-place policies that were in existence in the school district. And that led to, obviously, they breached that, and that breach approximately caused the death of Donnie Hampton. So, what the school district has argued and what their main argument was in the trial court is, well, we've got this public duty rule. And the public duty rule says, well, governments cannot be liable for negligently providing governmental services. They say that this displaces the traditional duty analysis. Now, in this regard, that is repugnant to Section 2424. Because if they don't have to provide, if the government service that we're talking about is supervising and disciplining students, and they don't have to do that because of the public duty rule, then 2424 means nothing. So, we've got something specifically contradictory. Now, they're saying, they argued to the trial court that, well, no, we've got a case, Henrick v. Libertyville School District. Well, Henrick v. Libertyville School District only dealt with the combination of 2424, the school code, with an old section of 3108 of the Tort Immunity Act. And the Supreme Court said, 3108 of the Tort Immunity Act governed, therefore, that's immunity. But we're not dealing with that. We don't get to immunity until after duty is dealt with. That is an affirmative defense, not something that's applicable here. We've got a very recent case from the Supreme Court, the Harris v. Thompson case, in which the Supreme Court said that local governments are liable on the same basis as private tort feasors. Meaning that you don't do, oh, let's look to a public duty rule first, and then maybe go to the traditional duty analysis. You've got to do the traditional duty analysis. What happened in Harris v. Thompson is you had two conflicting statutes. You have the Motor Vehicle Code, and you have the Tort Immunity Act. And as Justice Carmier, in his dissent in Doe 3 v. McLean County, said, well, the public duty rule does not last past the Harris v. Thompson case. This is, despite the Hess v. Flores case, that is your specific statement that the public duty rule doesn't last anymore. Now, Justice Freeman also said, and he's been very consistent throughout, saying that the public duty rule, a common law, judicially created doctrine, no longer survives Article 13, Section 4 of the Constitution, which abrogated sovereign immunity. And they said, well, the only thing that you can have immunity from is what the legislature gives you immunity from. So, therefore, they're saying Justice Freeman, Justice Carmier, and Justice Theis all say that the Tort Immunity Act does not apply anymore. This court, in Doe 3 v. White, said that it was not applicable to protect the school district in the case in which they failed to give adequate information to another school district that was going to hire a teacher that was engaged in sexual misconduct with a student. The Supreme Court also said, the public duty rule was raised. The Supreme Court, Justice Burke said, it doesn't apply. But we had three judges, three justices of the Supreme Court say, no, let's look at that public duty rule and understand that it no longer exists. Three is not a majority. Pardon? I understand that. I understand we need four. But it is time, I think, that you cannot, in light of Harris v. Thompson, because in Harris v. Thompson, you have a majority of the court saying, look to traditional duty analysis. And that is directly a case that public duty rule would have applied. We had an emergency service vehicle that caused an accident. That emergency service vehicle said, they said in that case, well, let's look to the duties under the Motor Vehicle Act, which say negligence is the applicable standard. Or we have the Tort Immunity Act, which says willful and want. The Supreme Court said, look to the Tort Immunity Act, willful and want. But you never get to immunity if you say there's no duty. And that's why Justice Carmier says that it cannot, that the public duty rule cannot survive Harris v. Thompson. The Supreme Court has been very clear in saying duty of a public entity is the same as a private tort visa. They just have avoided the question since, in Doe v. White, they avoided the question. In DeSomet v. County of Rock Island, they avoided the question. Justice Freeman called them out on that. Justice Carmier and Justice Thies called them out on it. And so I think while you're right, Your Honor, that three is not a majority, they really are saying it because you've got the majority in Harris v. Thompson. So now the question then comes to, did we plead willful and want? And I would say yes. The court looks to what is willful and want. The willful and want behavior here is one in which, if you'll excuse me, there's an actual or deliberate intention to cause harm or which is, if not intentional, shows an utter indifference or conscious disregard for the safety of others. That's under 1-210 of the Tort Immunity Act. Well, what we have here is what the critical element that we're looking at here, and that is the knowledge of the school district. What did the school district know? Did they act with knowledge of the dangers that were facing its students? And that is what we have pled here. We pled. The school district knew. They knew what the game was. There had been kids in the schools that had been hurt. They knew explicitly what the game was. That involved kids punching each other in the chest or abdomen as hard as they could. They knew kids were playing it. They knew other kids were being hurt. And they didn't act. They acted with knowledge. We pled sufficient facts of that knowledge, and they acted or failed to act, despite knowing there was a high probability of serious physical harm that could be caused to its students. They could have acted. They knew what was going on and didn't act. So once you get to the point where have we pled duty, which I believe we have under the four elements as my brief points out, breach of duty, proximate cause, and damage, now then you get to tort immunity. Only then, and those are separate questions. The Supreme Court has been very clear on that. Okay? They say under the Tort Immunity Act, look to 4-102 of the Act, which does not have a willful and wanton exception. Agreed. That section doesn't. But our position is that does not apply. That section is not the applicable section. Rather, 3-108 of the Tort Immunity Act is the one that applies. Okay? How do I get there? Well, 3-108 is one that says it's dealing with supervision of activities on public property. Our complaint specifically is dealing with providing of supervision, discipline. They try to paint it as, no, sorry, we're doing police protection services. And they point to the Thames case and the Larson case, which deals with providing of metal detectors. That's not what we have here. What we have here is a supervision case. And that is just like what the Supreme Court dealt with in Doe v. Chicago Board of Education. In Doe v. Chicago Board of Education, we had a situation in which a young student was sexually assaulted on a school bus. They had had a monitor on that bus to make sure that the students were safe, to supervise what was going on in that school bus. That monitor called in sick. They didn't provide a substitute. The Supreme Court says, despite an argument saying, this is police services, this is like police protection. The Supreme Court said, no, this is not. This is supervision. This is the case where even if 4-102 did apply, 3-108 being more specific to the situation is the applicable provision. That is the one that should apply, and that does have a willful and wanton exception to it. And that's what's applied. It's the same thing that's following in Murray v. Chicago Youth Center. There again, the Supreme Court said, okay, you have a provision of the Tort Immunity Act that says there is no exception for willful and wanton versus one in which there is. They looked to it and said, which is more applicable to the exact situation that we're dealing with? Now, they are not allowed to look and just say, they're trying to paint our pleadings in a manner that is best for them. But it is not how a reasonable reading of those pleadings are. We're not saying that they should have had guards posted in the school somewhere to provide, quote, police protection type activities. We wanted them merely to supervise. Supervise the kids, tell them you can't fight, discipline them for fighting, enforce the policies that are already in place to prevent the kids from fighting. That's what our argument is. Now, they then say, well, we have a different tort immunity that should be applicable. That being the discretionary versus ministerial immunity under 2201 and 2109 of the Tort Immunity Act. Under those circumstances, you've got to ask two questions, and both must be applicable in order for the immunity to apply. First is to the type of position held by the public employee. No question here. This is a policy we're dealing with a principal, an assistant principal. They are policy makers. Question one is answered in their favor. The other question, though, because both have to be met, is whether the determination here, the type of action omitted, was both a determination of policy and an exercise of discretion. And in that regard, you've got to look to Van Meter versus Darien Park District from the Supreme Court. In that case, the court first said, well, it is their burden of showing that the pleadings on its face or through use of affidavits or other evidentiary material, that there is showing that this was a matter of discretion. Well, on its face, there is no affidavit attached here. So you've got to look to the face of the pleadings. And a discretionary act here are those which are unique to a particular public office, whereas a ministerial act are those acts which a person performs on a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without reference to the official discretion as to the propriety of the act. Our pleadings on its face say there were policies in place to prevent fighting. All that was required here was for the school officials to enforce those in place policies. Your Honors, I would ask that you reverse and remand to me. Thank you. I have additional time on rebuttal. Thank you and good morning. On behalf of McLean County District Unit 5, we're asking you to affirm. This is an interesting case from the standpoint of many times when we come before the appellate court, we've got one issue that really can dispose of the case, and the court has to look long and hard at that issue. But in this case, we have the unusual situation where there are at least three bases that are independent bases that this court could evaluate this case and still uphold the trial court's dismissal of the complaint. And I'll mention those briefly and then we can talk about those individually. I agree with counsel from the standpoint that we have to first ask is there a duty? Second, if there's a duty, is there applicable immunity? And if there isn't an applicable immunity, then we ask ourselves, is the complaint alleging willful and wanton misconduct, is that a sufficient complaint? I think that's the framework that we look at in this case to see whether or not the trial court should be upheld. When we do that, I think what we find is this court could adopt any of those arguments as the dispositive ruling in this case. And I'll start with the public duty rule. We have raised the public duty rule. We've cited cases that we believe that have applied that rule in the context of schools. Counsel has spent quite a bit of time up here today arguing that that is not a viable doctrine anymore and we've pointed out in our brief that they've waived that because they engaged that argument at the trial court. They didn't challenge the viability of that doctrine at the trial court. And when you look at reply brief page 7, you see that they in essence admit that. But they say, but this is such a significant case because we've got a deceased minor and significant issue that might affect other schools that the court should go ahead and consider that. But I would point the court to this, the Zimmerman case. I'm not going outside the authorities in the record here. But if you look at Zimmerman, in Zimmerman there were two cases that they talked about that specifically addressed a waiver argument such as this. And it was the City of Leon and the Callaway case in the Zimmerman decision. And in both of those cases, the public duty rule had been raised. The question on appeal was whether or not the special relationship exception applied. It had not been raised below. It was raised at the appellate or Supreme Court level and it was fully briefed by the parties. And the court said, no, we're not going to go there and we're not going to address it. Now one of the courts, I will say this, did say there was waiver at that point. But in the alternative, we'll address it and we don't find it applies. So this court, I think, has ample authority as cited through Zimmerman to say, no, we're not going to disturb that issue. We're not going to address the continuity of viability. Now if this court does want to explore that further, I think there's some things that we can look at in this case as to whether that's a continually viable doctrine. First of all, I'm aware of the decision in Harris and what Harris says. But the one thing that Harris does not say is that the public duty rule is abolished, is overruled, is vacated, is no longer good law. Now is there a discrepancy among members of the court right now? Certainly there is. But the law remains that that doctrine is in force. When counsel points out the Greene case and says, well, Greene went ahead and dealt with that doctrine, despite the fact of the Harris case and the Doe 3 case, in Greene, the court said, I hear those arguments on duty, but I'm not going to address those because we've got a nice issue on immunity that we can dispose of. It's clean, it was briefed, and we're going to address that. And they did that. It's the exact same thing I'm saying to this court here. You've got multiple independent grounds that you can affirm on. Now, I would also point out, when we look at the Doe 3 case, first of all, when we look at what this court did, this court did not say that the public duty rule does not apply in the context of a school. What it says is it's not relevant to the analysis here whether the public duty rule can or should be applied to a school district or in a school context. The context is not a determining factor. Instead, it's the nature of the alleged conduct of the individual administrators that bears the rule's applicability. The conduct that was alleged in that case had nothing to do with provision of police powers or anything of that nature. What it had to do with in there was simply voluntarily preparing a document that was wrong, apparently, according to the allegations of the complaint, and sending it off to another school, which, according to the complaint, I have to be careful because we were in that case too, but according to the allegations of the complaint, the school was aware that this guy, the teacher, had molested other children, and so they're contending that there was a falsification or misinformation in that letter. And that's not what we have in this case. In other words, the court, when it looked at that, found a voluntary undertaking by the school with an intentional disregard for public welfare because it knew that the occurrence was reasonably foreseeable to occur later. So when we look at what the Supreme Court did in that case, the Supreme Court, again, in Doe 3, did not look at that issue and say, the public duty rule is not applicable anymore. What it said is it doesn't apply here because the complaint did not allege that defendants failed to protect the plaintiffs. So that's a very different situation than what we have here. So we think that doctrine is still viable, and if you apply it, that leads us to the next step in the analysis, and that is, are there exceptions to that doctrine that apply? And we've outlined those in our brief with respect to what are the exceptions that the courts have recognized, and I think that's where when we look at this case in light of the allegations, we see that there is no special relationship play. And when you look at Dames and you look at Lawson, they applied the special relationship test. Now, they did it at different times in the case, and I don't think that's important for our discussion today. I think what's important is the fact that they applied the special relationship test with a situation where we had very, very similar allegations to what we have here today. In other words, the defendant is charged with having knowledge of the general dangerous condition on the premises, and that's it. There's not specific knowledge. The court walks through those four factors and says, the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed. And on these allegations, that doesn't pass the standard. And when we look at the allegations here, we see the exact same type of situation. And we'll revisit these concepts again when I talk a little bit about Wilfram Lawton. But when we look at the complaint, now, Counsel's kind of generalizing when he talks about what the school here was aware of. But when you look at the amended complaint, paragraphs 11 and 12 are where they actually say what the school was supposedly aware of. And when you look at those two paragraphs, what you see is they were aware the game was played on the school's premises by students in the boys' bathrooms. They don't say when. They don't say who was involved. They don't say that the plaintiff was or the decedent was involved. Paragraph 12 says the school was aware the game involved boys striking each other about the chest and abdomen. Those are the only allegations that we have here. Whether we're talking about the application of the special duty rule exception or we're talking about Wilfram Lawton. Again, we'll get into that later. But regardless of what theory we're looking at, that's the gist of the allegations. They don't say that the school knew that the decedent was in the bathroom, that there was going to be a battle royal or the game or however you want to term it, and that he had a significant increased specific risk of harm. They just say, well, people knew that this game was being played on the premises and they knew what the game was. That's not enough. And that's the exact same thing when we look at Thames and we look at Lawson and we see what the court looked at there. Again, they're applying this special duty exception analysis. And in Thames, the court says, knowledge that weapons were routinely brought into schools did not establish unique awareness of the plaintiff's generalized knowledge of possible peril to all students. Then they say, there are no allegations that the board knew that a particular student was in possession of a gun on the premises on the day of the shooting or that the board knew the decedent was specifically in danger of being shot. Now that's exactly, you substitute those words with playing this game in the bathroom and you see the conclusion has got to be the same. When we look at Lawson, we see the same type of thing. Intermittent use of metal detectors. The court says, knowledge of a general danger is not actual knowledge of a particular risk to the particular plaintiff. And that's what's missing here. Regardless of whether we're doing a special duty analysis or regardless of whether we're evaluating this case simply under a willful and wanton standard. So to try to summarize that real quick, our point is essentially this. The public duty rule does apply. We think they've waived the challenge to it. We think it's still viable as it is today. We think they have not been able to adequately allege application of special duty exception. Now, if you say I don't want to deal with that issue because it's very controverted out there and we're just going to dispose of this case on other grounds, the court could look right to the fact of is there immunity here. Now, the green case that we cited specifically talks about how do we view the application of 4-102. They don't limit this strictly to police forces. They look at the nature of the allegations to determine if they're asking to be protected. That's exactly what they're asking for here. You didn't protect this decedent from this game that you knew, according to them, was a risk and that was being played on the premises. It's a provision of police services. Now, how does that compare with the Doe case that they talked about, providing of a bus monitor on a school? Well, I think there's a very big difference between simply providing a monitor with special needs students to be able to make sure they get where they're supposed to be and to make sure they're doing the right things and to just have an adult figure around compared to the situation here where they're not just saying, well, you should have had somebody in the bathroom so that something didn't happen in the bathroom. What they're saying is you knew that there was essentially an assault and battery type activity going on in your school. You should have had somebody there to protect us. That's provision of police service. It's akin to that. So we think that that Green case is very applicable. And again, when you look at how this court dealt with the application of the public duty rule in Doe 3, it talked about the nature of the pleadings. Well, there are some cases that talk about 4-102 being a statutory embodiment of the public duty rule. And so if you accept that, the analysis that the court did in Doe 3 here as to whether or not the public duty doctrine applies would be the exact same analysis that they applied in the Green case to determine do we apply 4-102 or not. Is this police protection services? I can't say that today. So I think there's a strong similarity there. Now, they keep referring to 24-24. The cases that we cited in our brief, that's an immunity. That's not applicable here. They argue that 3-108 should apply and it wasn't raised below. Well, it wasn't raised below because they didn't allege any limits. As he said, 3-108 has a breakthrough for willful and wanton conduct. They've alleged willful and wanton conduct. And in a few minutes, we'll talk about why we think that that's not a valid cause of action in this case. But we don't think 3-108 applies in any regard because when you look at the two subsections of that case, you'll see in subsection A, they talk about when a public duty undertakes to supervise an activity. Well, the tone of their brief and their complaint is that we didn't undertake any supervision. So you can't rely on subsection A to say you supervised when they're saying you didn't supervise. So that leads us to subsection B, a failure to supervise unless the employer, the local public entity, has a duty to provide supervision imposed by the common law. Well, what that does is it takes us back to a public duty analysis. And as we showed earlier, there is no duty in this particular case. So we don't think 108 would apply. Now, even if you would say that that situation would, that leads us to my last point, which is essentially this. This complaint, if we get to the point where we're going to say, does it state a claim for willful and wanton misconduct? And the answer to that is no. And I say that in part kind of referring back to my prior comments about the nature of the allegations and what they're charging we had knowledge of and what we didn't. When you look at the cases that we laid out in our brief, Halls Apple, Booker, Clay, and there were a couple more, Seidman and Floyd. Every one of those cases has factual patterns where they were alleging willful and wanton misconduct. And the question was, is there adequate willful and wanton conduct alleged? Each one of those cases has fact patterns that are much more egregious than the complaints alleged in this case. And the court said, no. You didn't meet your burden. And they walk through each of those to point out, here's what's alleged. Here's what you should have alleged. If we do that in this case, we see that the allegations just don't meet the standard. Now, they point out two cases, Bernicek and Hill case, as an example of why their complaint is sufficient. Bernicek is the case of the crack the whip game where the kids were playing. And the difference between our case and that case is that the allegations there were that the teachers at the school were standing there, watching the event take place. And they saw these kids being whipped around at the end of the chain where they hold hands. And it was alleged that they knew this was a dangerous condition and could cause a problem. And lo and behold, it did. Now, in our case, they're not alleging that we had somebody in the bathroom that was watching this and said, yeah, keep doing it. They weren't making any allegations that we had somebody on the outside that the kids said, we're going to go in and play this game. And they said, OK, be careful. That's not what we have. The Bernicek case is a much more egregious case than what we have here. So that's not a controlling case. The Hill case is the other example where a chemistry experiment was being performed without the student wearing goggles. Again, right in front of the teacher. So you had direct knowledge of a particular individual, particular student that was doing a dangerous activity at the time it was being done. Again, we don't have that here. And that's what distinguishes our case from the cases that they've cited. And I would argue that our case is much more factually similar to those cases such as Booker that we pointed out. And I'll say this in passing here. When you look at the Booker case, allegations of willful and wanton conduct. The teacher knew the plaintiff had been threatened by other students. The teacher knew that the identity of the leader of those threatening students, she knew who he was. But yet she appoints that leader as the bathroom monitor. And leaves the room and the plaintiff is assaulted while in the bathroom under the care of this monitor that she knew had been a specific threat. That's much more egregious than we have here. And they said, no action for willful and wanton conduct. So again, when we go back to the amended complaint and we see paragraphs 11 and 12, we are aware that the game was being played on the school premises by students in the boys' bathroom. We were aware that the game was, again, violent boys striking each other about the chest and abdomen. That just doesn't get us to willful and wanton conduct. So you can find a public duty applies. You can find that they failed to plead the exceptions. Case is over. You can affirm the judgment of the circuit court. You can say, well, we're not going to address that or we disagree with what Brad's saying today. You can move into the concept of is there an immunity. You can say, yes, under the green case, we think that there is an immunity here offered under 4-102. You can say, we don't want to address that case because even if we assume there's a duty, even if we assume there's no immunity, we still have to come to the ultimate conclusion in this test. Whether it's under his 3-108 concept that he wants to argue or whether it's under straight allegations of the complaint. And you can say, this complaint does not state the cause of action for willful and wanton misconduct. And so for those reasons, we think that the court can affirm on any of those individual bases. And we would ask that you do so. We also raised an issue of standing in our brief, and we would rest on our brief. We thank you very much. Thank you. Rebecca? Thank you. First off, in terms of the amended complaint, I would respectfully disagree with counsel. It is not merely paragraphs 11 and 12. I think you have to look at the entirety of the first amended complaint. Paragraphs 8, 9, 10, 11, 12, and 13 all deal with the knowledge together. And all of those have to be taken together, and the inferences from those things. We say that kids have been hurt playing the game within the school. That the school knew that the game was being played in the boys' bathroom. We know that the school involved punching the chest and the abdomen as hard as possible. They knew that it was being played often and for a year, for at least a year. And that they knew all of this. And that is the critical thing. It is not necessary that they knew that Donnie Hampton was going to play. It might be under the special duty exception, but we're not dealing with the special duty exception. We're dealing with willful and want. It would be sort of like saying there is a huge crater in the playground. Schools know about it for three years, but they don't do anything. They don't put warnings. They don't put any barricades up. And the fact that Johnny Smith didn't get hurt as opposed to Jane Green, it doesn't make a difference. We're not talking about what Johnny knew. They knew that boys were playing the game in the boys' bathroom. That kids have been hurt. And despite that, they're not doing things to stop it. Now, relative to William Unity, again, we don't use the word that they failed to protect Donnie at all. We don't say they failed to protect. We say they didn't. They didn't supervise. They didn't discipline. And the Albers case that he replies to was not on a motion to dismiss. He says that was after trial. That's different. If we can't show that knowledge explicitly and all of the knowledge that they had and who this, that, after trial, okay. But this is on pleadings. Different stage of the litigation. The case is that they're trying to mold our pleadings and argue our pleadings the way they want to, not the way that it is written. And you've got to take those inferences in the light most favorable to my client. Now, in terms of the public duty rule itself, again, what we're saying here is there is not, there has not been four justices who still say it still applies. There is, we're saying we've got three justices who say for sure it doesn't. The others have said we just don't want to deal with that yet. But we do know that we have a case, we have that case, the Harris versus Thompson case, where it could have been applied. I have not seen the pleadings in that case, but my bet is it wasn't raised. It wasn't raised. I had a case very similar to that years ago dealing with a Fifth District case. Nobody raised the public duty rule, even though it had been in application for years and years and years and years. Zimmerman has that question. Riniak says that we're not so sure it applies anymore. And critically, where 2424 comes in is there is an explicit statutory duty to say that. One point on the standing issue that they bring out is that the survival act, that can be taken care of by amendment, even after judgment. We've got a case where we plead willful and want the school new. That knowledge is the critical thing. And we've let us out, and I'd ask for a reversal and a remand. Thank you. I take this matter under advisement and stand recess until 1 o'clock.